**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TOM BAKER, individually and on behalf of all others similarly situated, | Case No.: 1:25-cv-00430-TWP-MKK |
| Plaintiff, | |
| v. | |
| CUMMINS INC., N. THOMAS LINEBARGER, JENNIFER RUMSEY, and MARK A. SMITH, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Introduction ............................................................................................................... 1

Background ................................................................................................................. 3

Argument .................................................................................................................... 6

I.     The Complaint Fails to State a Claim Under Section 10(b) (Count I) .................................. 6

   A.    Plaintiff Fails to Plead Loss Causation ................................................................ 7

   B.    The Complaint Fails to Plead a Misleading Statement .......................................... 8

       1.    Defendants Did Not Violate ASC 450 .......................................................... 8

       2.    The Annual Reports Were Not Otherwise False and Misleading ................................ 14

       3.    Defendant Rumsey Did Not Make a Misstatement During the May 4, 2021 Earnings Call .............................................................................. 21

   C.    The Complaint Fails to Plead Scienter .................................................................. 22

       1.    The 2016 Consumer Class Action's Testing of NOx Emissions in 2012–17 Vehicles Does Not Imply Knowledge Regarding 2019–23 Statements .............................................. 24

       2.    Speaking Generally on a Topic Does Not Plead Knowledge of Falsity ...................... 26

       3.    The DOJ and CARB Complaints Do Not Support Scienter ........................................ 27

       4.    Purported Statements to Analysts Do Not Plead Scienter ...................................... 28

       5.    Job Titles Do Not Plead Knowledge ............................................................ 28

   D.    Plaintiff Lacks Standing as to Post-Purchase Statements ........................................ 29

II.    The Complaint Fails to State a Claim Under Section 20(a) (Count II) ................................ 30

Conclusion .................................................................................................................. 30

Appendix A:  Challenged Documents .............................................................................. 32

## **TABLE OF AUTHORITIES**

### CASES

Page(s)

*Anderson v. Abbott Lab'ys*, 140 F. Supp. 2d 894 (N.D. Ill.) ....................................18, 19

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928 (7th Cir. 2024) ....................................................................................22

*Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743 (S.D.N.Y. 2018) ..................12

*Ballan v. Wilfred Am. Edu. Corp.*, 720 F. Supp. 241 (E.D.N.Y. 1989)...........................18

*Barry v. Cboe Glob. Mkts., Inc.*, 42 F.4th 619 (7th Cir. 2022)........................................7

*Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441 (N.D. Ill. 2022) .................................21

*Chew v. MoneyGram Int'l, Inc.*, 2024 WL 4346522 (N.D. Ill. 2024) ...........................29

*City of Austin Police Ret. Sys. v. ITT Educ. Servs. Inc.*, 388 F. Supp. 2d 932 (S.D. Ind. 2005).................................................................................................................23

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592 (7th Cir. 2021) ..................................................................................................................21, 26

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705 (S.D.N.Y. 2013).........................................................................................................10

*Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589 (7th Cir. 2019) ....................6

*Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697 (N.D. Ill. 2005) ...........................................29

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)..................................................7, 8

*Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009)...............................................28

*Fryman v. Atlas Financial Holdings, Inc.*, 2022 WL 1136577 (N.D. Ill. 2022) ...........29

*Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001)...........................................18

*Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761 (N.D. Ill. 2010)......................28

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp*, 2022 WL 1642221 (N.D. Ill. 2022)....................................................25

*Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007)............................6, 22

*Hunter v. Elanco Animal Health Inc.*, 2022 WL 3445173 (S.D. Ind. 2022) ...............29

*In re 3M Co. Secs. Litig.*, 2021 WL 4482987 (D. Minn. 2021)......................................13

*In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..........................................................................................................12, 13

*In re Brightpoint, Inc. Sec. Litig.*, 2001 WL 395752 (S.D. Ind. 2001)......................29, 30

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916 (N.D. Ill. 2019) ..........................................................................7

*In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................15

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219 (C.D. Cal. 2013)............................................................................................................16

*In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913 (S.D. Ind. 2008)...................28, 29

*In re Inotiv, Inc. Sec. Litig.*, 2024 WL 1344784 (N.D. Ind. 2024) ................................29

*In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................9

*In re Lumen Techs., Inc. Sec. Litig. II*, 2025 WL 971748 (W.D. La. 2025)..................10

*In re Lumen Techs., Inc. Sec. Litig. II*, 2025 WL 978229 (W.D. La. 2025)..................10

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76 (S.D.N.Y. 2003) ..............................................................................................................15

*In re Perrigo Co. PLC Sec. Litig.*, 435 F. Supp. 3d 571 (S.D.N.Y. 2020) ....................24

*In re Progenity, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 167122 (S.D. Cal. 2021) ........9

*In re Rough Rice Commodity Litig.*, 2012 WL 473091 (N.D. Ill. 2012) ........................15

*In re Walmart Inc. Sec. Litig.*, 2024 WL 1513532 (D. Del. 2024) ..................................9

*Lastre v. Leonard*, 1990 WL 37658 (N.D. Ill. 1990)......................................................15

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 574665 (N.D. Ill. 2004).....................................................................................................................22

*Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915 (N.D.N.Y. 2020) .............................10

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ....................15, 27

*MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023)................................7, 8

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154 (E.D. Wis. 2017) ..........................................................................................................27

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933 (7th Cir. 2018) ...............................................................................................6, 23, 27

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2011 WL 338865 (S.D. Ind. 2011) .................................................................23

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952 (7th Cir. 2012) ....................................................................6, 23

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718 (S.D. Ind. 2009) ...............................6, 23, 27, 28, 29, 30

*Pugh v. Trib. Co.*, 521 F.3d 686 (7th Cir. 2008)...........................................24, 28, 30

*Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012)...........................9

*Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir. 1992) ...............................29

*Salim v. Mobile Telesystems PJSC*, 2021 WL 796088 (E.D.N.Y. 2021) .....................................13

*Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777 (N.D. Ill. 2006).........................................24

*Smallen v. W. Union Co.*, 950 F.3d 1297 (10th Cir. 2020).............................................25

*Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356 (N.D. Ill. 2018)..........................................................................................18

*Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833 (N.D. Ill. 2003) ............................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .........................................13, 22

*Tian v. Peloton Interactive, Inc.*, 2025 WL 510043 (E.D.N.Y. 2025)............................................25

*Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260 (S.D. Ind. 2016)...................................6, 22, 23

*Zhou v. Desktop Metal, Inc.*, 120 F.4th 278 (1st Cir. 2024) .........................................................19

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 78u-4(b)(1) .......................................................................................6

40 C.F.R. § 86.1803-01................................................................................................3

42 U.S.C. § 7521 ................................................................................................................3

42 U.S.C. § 7525.................................................................................................................3

CAL. CODE REGS. tit. 13, § 1956.8(C) (2024) .................................................................22

## OTHER AUTHORITIES

*Vehicle Emission System Control Requirements* (Jan. 2, 2025),
      https://www.epa.gov/enforcement/frequently-asked-questions-cummins-
      violation-clean-air-act-vehicle-emission-system#5 ............................................................5

Defendants Cummins Inc. ("Cummins" or the "Company"), N. Thomas Linebarger, Jennifer Rumsey, and Mark A. Smith (the "Individual Defendants," and together with Cummins, "Defendants") respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (cited as the "Complaint" or "¶ _"). Exhibits cited herein (cited as "Ex. __") are attached to the Declaration of Michael G. Bongiorno filed herewith.

## INTRODUCTION

Cummins is an Indiana company that produces energy solutions, including engines. In 2019, Cummins announced the commencement of a formal review of its emissions certifications and the compliance process for certain diesel pickup trucks (the "Review"). Cummins candidly informed investors that the Review flowed from concerns that the Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") expressed about whether certain software operated as a "defeat device" to permit emissions beyond certified levels. As the Review proceeded over the next four years, Cummins continued its transparent approach, updating disclosures each quarter to reflect new information. For instance, when it became clear there would be a recall, Cummins immediately disclosed that, along with the projected cost. Then, on December 22, 2023, Cummins entered a settlement with the government to resolve the matter without any admission of wrongdoing (the "Settlement"). A modest stock price decrease followed, and then the stock price recovered quickly and fully.

Although the Review and Settlement had nothing to do with securities or investors—and were the subject of transparent disclosures—Plaintiff seized on the headlines to manufacture this securities claim. However, Congress and courts recognize that securities plaintiffs often seek to piggyback baseless claims of securities fraud upon events in the news, and accordingly have established a high pleading bar. Securities claims are subject both to particularity requirements under Federal Rule of Civil Procedure 9(b) and the heightened standards of the Private Securities

Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA").  This case does not survive under those standards.

*No Loss Causation*:  The loss causation element of a Section 10(b) claim requires a plaintiff to plead a loss *due to fraud*.  Under settled law, an investor suffers a stock trading loss due to fraud by: (i) purchasing stock after a fraudulent statement has inflated the stock price, and then (ii) selling it *after* a revelation of the truth has deflated the stock price.  Plaintiff, however, sold his Cummins stock on July 6, 2021, over two years *before* he alleges that the "truth" about securities fraud was revealed by the December 22, 2023 Settlement (¶¶ 7, 226–27).

*No Misrepresentation*:  Plaintiff's core theory is that Cummins' Quarterly and Annual Reports filed between 2019 and 2023 violated Accounting Standards Codification ("ASC") 450, an accounting standard that defines how financial statements address contingent liabilities.  Plaintiff claims that ASC 450 required the Reports to contain detailed information about the Review, including a guess about future potential loss.  However, Cummins—as a matter of transparency—repeatedly disclosed far more than ASC 450 would require.  Plaintiff fares no better complaining that Cummins' Annual Reports also contained false statements about environmental compliance and sustainability.  Far from misstating anything, Cummins fully and fairly disclosed details to its investors, including that it faced regulatory scrutiny over potential defeat devices, that it was conducting a Review, and that the outcome could be materially adverse.

*No Scienter:*  The Complaint also fails to establish a strong inference of fraudulent intent, or scienter.  Plaintiff cites no confidential witnesses, internal documents, or insider stock sales— no particularized facts—that establish Defendants' state of mind or a cogent motive to commit fraud.  The far stronger inference is that Defendants acted in good faith: (1) Cummins engaged experts to assist with a hyper-technical years-long Review, (2) Cummins disclosed information as

it became available, and (3) without admitting wrongdoing, Cummins voluntarily addressed government concerns. Plaintiff's assertions based on other irrelevant litigation, general statements by executives, and Defendants' titles are laden with assumptions that cannot raise a strong inference of fraudulent intent, as required by the PSLRA.

Thus, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### I.    Cummins' Internal Review and Disclosure to Investors

Defendant Cummins is an Indiana company that designs, manufactures, and distributes energy solutions. ¶ 27.[1] Cummins is subject to complex environmental regulations under both federal and state law. *E.g.*, ¶ 203; 42 U.S.C. § 7525 (motor vehicle engine compliance testing and certification). The process for Cummins to certify that an engine model complies with requirements is also complex and involves sometimes difficult engineering and regulatory questions. *E.g.*, ¶¶ 134, 203; 42 U.S.C. §§ 7521 (emissions standards), 7525.

In 2019, the EPA and CARB raised concerns about whether certain aspects of emissions systems on 2019 RAM model 2500 and 3500 diesel pickup trucks reduce the effectiveness of the vehicles' emissions control systems and thus act as defeat devices (the "Inquiry").[2] ¶¶ 57, 138, 141. In response, Cummins initiated the Review. ¶ 57. Cummins worked with external advisors to ensure that its certification and compliance processes complied with the law. ¶¶ 57, 138, 141.

---

[1] Individual Defendants Linebarger, Rumsey, and Smith are Cummins' former Chief Executive Officer ("CEO") and Chairman of the Board, current CEO and Chair of the Board, and Chief Financial Officer ("CFO"), respectively. ¶¶ 19–21.

[2] The Clean Air Act's regulations define a "defeat device" as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system" under real world operating conditions, as compared to during emissions testing. 40 C.F.R. § 86.1803-01. An AECD may be software that modifies the operations of emissions control equipment under specific driving conditions to protect engines from damage or optimize fuel efficiency. *See id.*

Cummins took a transparent approach with investors. On April 29, 2019, Cummins publicly announced the Inquiry and the Review. ¶ 57. Thereafter, the Cummins Quarterly Report filed with the SEC on July 30, 2019, informed investors that: (i) the EPA and CARB had raised concerns about Cummins' emissions control systems; (ii) the focus was on 2019 RAM 2500 and 3500 pickup trucks, but other models would be reviewed as well; (iii) Cummins was working with external advisors to conduct a Review; and (iv) discovery of any noncompliance issues could have a material adverse impact on Cummins' financials. *E.g.*, ¶¶ 137, 141 (excerpting disclosures contained in Quarterly Report filed July 30, 2019). Cummins further stated, "[d]ue to the preliminary nature of the formal review, our collaboration with our regulators to address their questions and concerns and the presence of many unknown facts and circumstances, *we are not yet able to estimate the financial impact of these matters*." *E.g.*, ¶ 137 (emphasis in Complaint).

Over the next four years, each quarter, Cummins kept investors informed about its progress.[3] As new information emerged, Cummins updated disclosures. For instance, when the regulators' scope expanded to encompass other engines and model years prior to 2019, Cummins disclosed that. ¶ 174. When it became clear there would be a recall, Cummins disclosed both the fact of the recall and the projected cost. ¶ 188.

---

[3] ¶¶ 145–46 (excerpting disclosure in Annual Report dated Feb. 11, 2020); ¶¶ 155–56 (excerpting disclosure in Quarterly Reports dated Apr. 28, 2020, Jul. 28, 2020, and Oct. 27, 2020); ¶¶ 159–60 (excerpting disclosure in Annual Report dated Feb. 10, 2021); ¶¶ 172–73 (excerpting disclosure in Quarterly Reports dated May 4, 2021 and Aug. 3, 2021); ¶¶ 174–75 (excerpting disclosure in Quarterly Report dated Nov. 2, 2021); ¶¶ 178–79 (excerpting disclosure in Annual Report dated Feb. 8, 2022); ¶¶ 188–89 (excerpting disclosure in Quarterly Reports dated May 3, 2022 and Aug. 3, 2022); ¶¶ 192–93 (excerpting disclosure in Quarterly Report dated Nov. 4, 2022); ¶¶ 196–97 (excerpting disclosure in Annual Report dated Feb. 14, 2023); ¶¶ 206–07 (excerpting disclosure in Quarterly Reports dated May 2, 2023, Aug. 3, 2023, and Nov. 2, 2023).

## II.    **The Settlement**

On December 22, 2023, Cummins filed a Form 8-K announcing the Settlement with the EPA, CARB, and the Environment and Natural Resources Division of the Department of Justice ("DOJ").    ¶ 226.   The Settlement did not involve any admission of wrongdoing by Cummins. Cummins also disclosed that there would be approximately $2.04 billion in Settlement-related costs (which were separate from the previously disclosed recall cost).   To finalize the Settlement, CARB and the DOJ each filed complaints in court alongside notifications of settlement.[4]  ¶ 59 n.3.

## III.    **This Lawsuit**

This lawsuit was filed on January 15, 2024.   Dkt. no. 1.   Richard Kraemer was selected as Lead Plaintiff (Dkt. no. 38) and the case was voluntarily transferred to this Court (Dkt. no. 39). The Complaint challenges a variety of disclosures made between 2019 and 2023, consisting of:

- Quarterly Reports: the Complaint challenges passages from fourteen of Cummins' Quarterly Reports filed between July 30, 2019, and November 2, 2023.   The Complaint posits that the Quarterly Reports violated accounting standards by inadequately addressing contingent losses arising from the Review.

- Annual Reports: the Complaint challenges passages from five of Cummins' Annual Reports filed between 2019 and 2023.   The Complaint posits that the Annual Reports: (i) violated accounting standards (i.e., same as the challenge to the Quarterly Reports); and (ii) contained false statements concerning Cummins' regulatory compliance, sustainability, and environmental certifications.

- Earnings Release: the Complaint challenges a comment made by Defendant Rumsey during a May 4, 2021 earnings call in response to an analyst question. ¶¶ 168–70 (challenging statement that "we have a leading position today in North

---

[4] The government alleged that certain diesel trucks for model years 2013–19 contained software that operated as a defeat device that reduced the effectiveness of emissions controls.   The government also referred to diesel trucks manufactured through 2023, but there was no allegation of a defeat device.   Instead, as to that period, the assertion was only that the engines utilized undisclosed engine control software features that did *not* increase emissions.  *See* EPA, *Frequently Asked Questions – Cummins Violation of Clean Air Act Vehicle Emission System Controls Requirements* (Jan. 2, 2025), https://www.epa.gov/enforcement/frequently-asked-questions-cummins-violation-clean-air-act-vehicle-emission-system#5 (post-2019 vehicles "did not include defeat device features and therefore did not create excess emissions").

America with natural gas products and our engines in the US are already certified to meet that CARB's 24 ultra-low NOx regulation").

*See* Appendix A (listing the challenged documents with Complaint citations).

## ARGUMENT

## I.    The Complaint Fails to State a Claim Under Section 10(b) (Count I)

The elements of a Section 10(b) claim are: (i) a material misrepresentation; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation. *E.g.*, *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Plaintiff must "satisfy the heightened pleading requirements of [Rule 9(b)] and the Private Securities Litigation Reform Act of 1995 ('PSLRA')." *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *7 (S.D. Ind. 2016). Plaintiff must also plead, with specificity, the reasons that a challenged statement was false or misleading when made. 15 U.S.C. § 78u-4(b)(1); *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 731 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012). Pleading "fraud by hindsight" is insufficient. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759–60 (7th Cir. 2007). Additionally, Plaintiff must allege with particularity facts supporting a strong inference that each defendant acted with "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false."[5] *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (citation omitted); *Cornielsen*, 916 F.3d at 600 (rejecting "group pleading doctrine").

Here, the Complaint fails to plead adequately loss causation, falsity, and scienter.

---

[5] Plaintiff must plead scienter for a corporate defendant, such as Cummins, through the scienter of the Individual Defendants. *E.g.*, *Zimmer*, 673 F. Supp. 2d at 747 n.28.

## A.      Plaintiff Fails to Plead Loss Causation

To plead a violation of Section 10(b) and Rule 10b-5, a plaintiff must plead loss causation—that is, that the alleged fraud proximately caused his loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005).  It is not enough to allege a stock purchase at an "inflated" price and a subsequent sale at a lower price.  *Id.* at 342–43; *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 931–32 (N.D. Ill. 2019) ("Allegations that a plaintiff purchased a security at an inflated price, alone, are insufficient . . . ."), *aff'd sub nom. Barry v. Cboe Glob. Mkts., Inc.*, 42 F.4th 619 (7th Cir. 2022).  Such a purchase-and-sale pattern may describe an economic loss, but not necessarily a fraud loss—stocks decrease in value all the time for non-fraudulent reasons.  To establish loss causation, a plaintiff must plead that he suffered a loss from a decline in stock price attributable to fraud.  *See Dura*, 544 U.S. at 342–43.  Moreover, in a putative class action, a named plaintiff must plead loss causation for his individual claim, not just on behalf of other, unnamed class members.  *See id.* at 346 (PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss").

Typically, a securities plaintiff pleads loss causation by identifying a "corrective" disclosure that either "revealed" the falsity of a prior statement or constituted the materialization of a previously concealed risk, and was followed by a stock price drop that caused the plaintiff to suffer a loss.  *See, e.g., MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1242 (11th Cir. 2023).  If a plaintiff sells his stock before any corrective disclosure, then by definition—even if he lost money because the stock declined in value between the dates of purchase and sale—that loss cannot be attributed to the fraud.  That is because the plaintiff purchased and sold at the same level of price inflation.  *See id.* at 1243; *Dura*, 544 U.S. at 342.

Here, Plaintiff fails to plead loss causation because Plaintiff *sold* all his Cummins stock before the "truth" allegedly emerged.  According to his PSLRA certification, Plaintiff purchased Cummins stock on March 5 and June 3, 2021, and sold all his stock on July 6, 2021.  Dkt. No. 13-2, Schedule A.  But his loss causation theory relies solely on alleged corrective disclosures and a stock drop *two and a half years later*, on December 22, 2023, when the Settlement was announced.  *See* ¶¶ 87–98; Dkt. No. 12, at 3–4.  Thus, while Plaintiff alleges that he purchased Cummins stock at an inflated price, ¶ 16, he sold at the same level of price inflation at which he purchased and did not suffer any loss proximately caused by the alleged fraud.  *See Dura*, 544 U.S. at 342 ("[A]n inflated purchase price will not itself constitute or proximately cause the relevant economic loss.").  Accordingly, Plaintiff fails to state a claim for securities fraud, and the Complaint must be dismissed.  *See id.*; *MacPhee*, 73 F.4th at 1248 (affirming dismissal of a complaint in which plaintiff sold stock "months before Defendants' fraud and wrongdoing alleged in the second amended complaint was revealed").

### B.    The Complaint Fails to Plead a Misleading Statement

Plaintiff must also plead—with particularity under Rule 9(b) and in accordance with the heightened standards of the PSLRA—that Defendants made a materially false or misleading statement.  Plaintiff uses a kitchen sink approach, alleging that nineteen Quarterly and Annual Reports and one earnings call contained false and misleading statements.  ¶¶ 129–208; Appendix A.  The below three subsections address: (i) Plaintiff's assertion that Quarterly and Annual Reports violated ASC 450; (ii) additional respects in which Plaintiff challenges the Annual Reports; and (iii) the May 2021 earnings call.  None is actionable.

### 1.    Defendants Did Not Violate ASC 450

The principal assertion of the Complaint is that fourteen Quarterly Reports and four Annual

Reports[6] that Cummins filed between 2019 and 2023 were fraudulent because they allegedly violated ASC 450, which governs accounting for loss contingencies.  *See* ¶¶ 99–111 (describing ASC 450).[7]  Specifically, the Complaint asserts that a disclosable loss contingency existed throughout the putative class period due to the pendency of the Review.  While the Complaint acknowledges that each Quarterly Report and Annual Report filed after the beginning of the Review devoted several paragraphs to discussing the Review, Plaintiff nonetheless asserts a violation of ASC 450 because the Reports allegedly "did not fully disclose the nature of the loss contingency" and did not estimate the loss or range of loss.  *E.g.*, ¶ 139.  This is incorrect.

a)      **The Complaint Does Not Plead Particularized Facts to Establish that Any Disclosure of the Review Was Required**

Although Plaintiff's claim fails because Cummins' disclosures during the putative class period satisfied ASC 450 (discussed *infra* § I(B)(1)(b)), the Complaint does not plead facts to establish the predicate that any disclosure was even required.  Courts examining claims of nondisclosure of government investigations have held that merely pleading the existence of a government investigation does not establish a legal obligation to disclose it.  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12, 21 (S.D.N.Y. 2016) (ASC 450 did not require disclosure of SEC investigation even after SEC issued Wells notice suggesting potential charges); *In re Walmart Inc. Sec. Litig.*, 2024 WL 1513532, at *9–10 (D. Del. 2024) (ASC 450 did not require disclosure of investigation until prosecutors indicated there would be an indictment); *Richman v.*

---

[6] The Complaint refers to the five Annual Reports covering the years 2018–22.  However, because the 2018 Annual Report was filed before the Inquiry, the Complaint does not allege that it violated ASC 450 by failing to address the Inquiry.  *See* ¶¶ 129–35 (not asserting that 2018 Annual Report violated accounting standards).

[7] Exhibit 1 contains a complete copy of ASC 450-20, the ASC section governing loss contingencies.  The Court may properly consider it.  *See In re Progenity, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 167122, at *12 (S.D. Cal. Sept. 1, 2021) (taking judicial notice of ASC 450 on motion to dismiss).

9

*Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) ("An investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges." (citation omitted)); *In re Lumen Techs., Inc. Sec. Litig. II*, 2025 WL 978229, at *44–45 (W.D. La.) (no duty under ASC 450 to disclose potential environmental liability relating to lead cables), *report and recommendation adopted*, 2025 WL 971748 (W.D. La. 2025); *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *11–12 (N.D.N.Y. 2020) (no duty under ASC 450 to disclose DOJ investigation); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 718 (S.D.N.Y. 2013) (no duty to disclose state attorney general investigation).

Here, the Complaint alleges only that a government investigation was pending for the majority of the putative class period.[8] Under the case law cited above, that allegation is insufficient to establish the existence of an obligation to disclose the Review. That, without more, defeats the claim.

### b)    Cummins' Reports Satisfied ASC 450

Regardless of whether disclosure was legally required, Cummins more than satisfied ASC 450. When applicable, ASC 450 requires financial statements to disclose "the nature of the contingency" and "[a]n estimate of the possible loss or range of loss or a statement that such an estimate cannot be made." ¶ 110; Ex. 1 (ASC 450-20-50-4). Cummins met both requirements.

---

[8] The fact that the Company first said in May 2023 that they expected the EPA/CARB to propose a consent decree and potential settlement, ¶ 220, confirms that the Complaint fails to establish any requirement to disclose the Review prior to that point. Cummins, in full transparency, had already disclosed the Review in April 2019, ¶ 57, therefore complying with ASC 450. *See infra* at 12–14.

### (i)    Cummins Disclosed the Nature of the Review

When a loss contingency is disclosable under ASC 450, the financial statements must disclose "the nature of the contingency." ¶ 110; Ex. 1 (ASC 450-20-50-4). The Quarterly and Annual Reports each disclosed the Review, explained over several paragraphs that it arose from "concerns that certain aspects of our emissions systems may reduce the effectiveness of our emissions control systems and did not fully comply with their requirements for certification," and warned that a finding of noncompliance could materially impact financial results. *E.g.*, ¶¶ 137–38. Cummins also disclosed the model years and types of trucks impacted. *Id.* And, as Cummins learned information, it updated the disclosure. *See supra* Background § A (describing updates to disclosures made over time). This more than disclosed the "nature" of the Review.

Plaintiff insists that Cummins' disclosure was not good enough because the Reports supposedly did not "fully disclose" the nature of the loss contingency.[9] However, the Complaint never identifies with particularity what additional facts contemporaneously known to Cummins were required to be disclosed under ASC 450. Moreover, Plaintiff misstates the standard. ASC 450 requires disclosure of the "nature" of the contingency—it does not say "fully," *see* Ex. 1 (ASC 450-20-50-4), which is a word Plaintiff added to inflate the disclosure obligation. In fact, ASC 450 requires only a few words generally describing the nature of the contingency. This is demonstrated by the example disclosure scenario presented in ASC 450. The example involves patent litigation that has proceeded through discovery. Even at that advanced stage, the exemplar disclosure provided by ASC 450 is simply, "[o]n March 15, 19X1, Entity B filed a suit against the company *claiming patent infringement.*" Ex. 1 (ASC 450-20-55-37) (emphasis added); *id.* (ASC

---

[9] *See, e.g.*, ¶ 114 (demanding that Cummins "fully disclose"); ¶ 127 (same); ¶ 139 (same); ¶ 143 (same); ¶ 147 (same); ¶ 157 (same); ¶ 161 (same); ¶ 173 (same).

450-20-55-36).  That is what ASC 450 means by "nature"—not pages or paragraphs on end, but rather *a few words*.  *Id.*  Courts regularly find brief descriptions sufficient under ASC 450.  *See, e.g.*, *Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 759 (S.D.N.Y. 2018) (finding disclosure that there is "no assurance that these efforts to reach consensual agreements with its stakeholders will be successful or that such agreements will fully restore the Companies operational and financial performance" sufficient under ASC 450); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 583–84 (S.D.N.Y. 2013) (disclosure referring to "pending and threatened litigation arising from the sales of MBS" sufficient under ASC 450).  Cummins' disclosure is far more robust than the few words supplied in the example.  Thus, the Court should reject Plaintiff's argument that Cummins did not disclose the "nature" of the loss contingency arising from the Review.

### (ii)    Cummins Was Not Legally Required to Guess at Potential Loss Exposure

The Complaint also posits that Cummins' Quarterly and Annual Reports from 2019–23 violated ACS 450 because Cummins allegedly was required to specify a loss or range of loss that Cummins expected to incur.  *E.g.*, ¶ 138.  Plaintiff again misapplies ASC 450.

ASC 450 allows the possibility that a potential future loss sometimes cannot reasonably be estimated.  The rule requires financial statements to provide "[a]n estimate of the possible loss or range of loss *or a statement that such an estimate cannot be made*."  ¶ 110 (emphasis added); Ex. 1 (ASC 450-20-50-4).  Cummins' disclosures initially stated that "[d]ue to the preliminary nature of the formal review, our collaboration with our regulators to address their questions and concerns and the presence of many unknown facts and circumstances, *we are not yet able to estimate the financial impact of these matters*."  *E.g.*, ¶ 137 (emphasis added).  Then, as Cummins determined that there would be a recall, later Reports disclosed the estimated cost of the recall ($30 million

for RAM trucks and $29 million for Titan). *E.g.*, ¶ 193. When claims by the government seemed likely, but the penalties were unclear, the Company disclosed that it was "not able to estimate the amount of these penalties today, but [it] anticipate[d] that the amount [was] likely to be material." Ex. 2 at 8 (Transcript of May 2, 2023 First Quarter 2023 Earnings Call).[10] And, as soon as the Settlement occurred, Cummins publicly disclosed the charge of $2.04 billion largely associated with the government fine. ¶ 7. ASC 450 requires nothing more.

Unsatisfied, Plaintiff posits that Cummins was required, prior to the Settlement, to guess about the range of loss associated with a claim that the government may or may not in the future assert. *E.g.*, ¶ 139. ASC 450 does not require that sort of speculation. *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d at 583–84 (describing ASC 450 requirements and holding that defendant was not required to disclose loss range for potential future claim); *In re 3M Co. Sec. Litig.*, 2021 WL 4482987, at *12–13 (D. Minn. Sept. 30, 2021) (same); *Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *7–8 (E.D.N.Y. 2021) (defendant not required to disclose loss range for potential FCPA claim notwithstanding allegations that defendant could have estimated loss based on prior claims faced by other companies).

Plaintiff observes that three carmakers had previously settled emissions cases years before (¶¶ 115–17), but the Complaint does not plead that the situations in those cases were anything like the one here, other than a superficial similarity that the cases concerned defeat devices. Moreover, the three prior settlements ranged from $305 million (¶ 116) to $1.675 billion (¶ 117) and thus did not coalesce around any particular claim value. Indeed, had Cummins done what Plaintiff appears

---

[10] The Court may properly consider Exhibit 2 because it is incorporated by reference into the Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that in deciding a motion to discuss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference . . . ."). The Court may consider Exhibits 3–7 for the same reason.

to suggest and used the settlements to estimate a loss range of $305 million to $1.675 billion, *it would have proven incorrect* and Plaintiff no doubt would be making a claim of securities fraud based on that incorrect estimate.  In short, the Complaint does not plead particularized facts to establish that Cummins, in real time during the class period, had the sort of information that would have triggered an obligation to estimate loss under ASC 450.

Finally, Plaintiff cannot alter the result with vague references to post-Settlement analyst commentary reporting that the size of the Settlement "didn't necessarily surprise" unspecified members of Cummins "management."  ¶¶ 92–95.  This allegation does not come close to the level of specificity that Rule 9(b) and the PSLRA require.  The Complaint does not identify the members of "management," state what views they had, state the basis for the unspecified views, or disclose when those purported views were formed.  Indeed, far from suggesting that management could easily have estimated the Settlement amount in advance, the Evercore analyst cited in the Complaint (¶ 93) makes clear the speculative nature of that endeavor.  The analyst admitted that his own guess as to Settlement value was off by a factor of two, speculated that the Settlement likely included a component reflective of government views of Cummins' environmental disclosure certifications, and pondered "how do I calculate how angry were these agencies regarding disclosure?  I guess the answer is $2b angry, not $1b angry."  Ex. 3 (December 22, 2023 Evercore ISI Analyst Report).

Thus, the Complaint fails to establish a violation of ASC 450.

### 2.    The Annual Reports Were Not Otherwise False and Misleading

The Complaint also takes issue with portions of the Annual Reports addressing the regulatory environment that Cummins faced, environmental sustainability, and engine certifications.  ¶¶ 129–35 (2018 Form 10-K); 148–54 (2019 Form 10-K); 162–69 (2020 Form 10-K); 181–86 (2021 Form 10-K); 199–203 (2022 Form 10-K).  Plaintiff claims that statements about

those matters were false because, according to the DOJ and CARB complaints filed in connection with the Settlement, Cummins violated environmental regulations. These allegations do not survive scrutiny.

a)    **The DOJ and CARB Complaints Filed in Connection with the Settlement Do Not Establish Wrongdoing**

Plaintiff's logic requires the Complaint to establish the predicate that there were, in fact, violations of environmental regulations. The Complaint does not do so successfully.

Plaintiff's assertion that Cummins violated environmental regulations is based entirely on the allegations of the DOJ and CARB complaints filed alongside the Settlement. *See* ¶¶ 59–86 (section of Complaint purporting to establish wrongdoing by relying entirely on DOJ and CARB complaints). However, under settled case law, a plaintiff cannot successfully plead wrongdoing by parroting allegations from other complaints. Complaints are just allegations, not proof of anything. *See Lastre v. Leonard*, 1990 WL 37658, at *3 (N.D. Ill. 1990) ("[A] complaint is not evidence but merely unproven allegations."). Thus, courts in the Seventh Circuit and elsewhere have repeatedly held that portions of a securities fraud complaint based on unsubstantiated allegations in another litigation are irrelevant and declined to consider them under Federal Rule of Civil Procedure 12(f). *See In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *5 (N.D. Ill. 2012) (adopting Second Circuit's reasoning that consent judgment between government and corporation, without formal adjudication, "cannot be used as evidence in subsequent litigation"); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008) (striking allegations lifted from another complaint); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003) (striking paragraphs of an amended complaint that "rel[ied] on the SEC's complaints" in another action because they were unsubstantiated, given that other matter never reached adjudication); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d

15

Cir. 1976) (finding that "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings" because consent decree at issue was "the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits by the district court"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (allegations "that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial" (quotation omitted).

This case law disposes of Plaintiff's claim because Plaintiff's entire basis for asserting environmental wrongdoing, or the existence of defeat devices, is the DOJ and CARB complaints. But those allegations are immaterial as a matter of law and cannot properly form the basis for a securities complaint.

### b)    None of the Challenged Statements Was False

Plaintiff's claim should be dismissed for the independent reason that none of the three sections of the Annual Reports that Plaintiff challenges (concerning the Regulatory Environment, Engine Certifications, and Environmental Sustainability) contained any false statements.

### (i)    Regulatory Environment Risk Factors

Plaintiff first challenges language from the Annual Reports providing the following risk warning about regulatory compliance (emphasis in Complaint):

> *Our products are subject to extensive statutory and regulatory requirements that can significantly increase our costs and, along with increased scrutiny from regulatory agencies and unpredictability in the adoption, implementation and enforcement of increasingly stringent emission standards by multiple jurisdictions around the world, could have a material adverse impact on our results of operations, financial condition and cash flows.*

> Our engines are subject to extensive statutory and regulatory requirements governing emissions and noise, including standards imposed by the EPA, the EU, state regulatory agencies (such as the CARB) and other regulatory agencies around the world.  Regulatory agencies are making certification and compliance with

emissions and noise standards more stringent and subjecting diesel engine products to an increasing level of scrutiny. *The discovery of noncompliance issues could have a material adverse impact on our results of operations, financial condition and cash flows.*

Developing engines and components to meet more stringent and changing regulatory requirements, with different implementation timelines and emission requirements, makes developing engines efficiently for multiple markets complicated and could result in substantial additional costs that may be difficult to recover in certain markets. *While we have met previous deadlines, our ability to comply with existing and future regulatory standards will be essential for us to maintain our competitive advantage in the engine markets we serve.*

¶¶ 148 (2019 Annual Report); 134 (similar from 2018 Annual Report); 162 (similar from 2020 Annual Report); 181 (similar from 2021 Annual Report); 199 (similar from 2022 Annual Report).

This language is truthful. Far from leading investors to discount risk arising from regulatory scrutiny or noncompliance, the language warns that Cummins is subject to "*extensive statutory and regulatory requirements*" and "*increased scrutiny*" by regulators, and that enforcement actions could have a material adverse impact on the Company. Moreover, the Annual Reports also contained detailed disclosures (addressed above) that Cummins was amid a Review of its certifications and compliance processes that was prompted by regulatory concerns about defect devices.[11] *E.g.*, ¶ 197. Thus, an investor reading the Annual Reports would understand that Cummins was being scrutinized for environmental noncompliance, that government enforcement action was possible, and that it could have a materially adverse impact. That is not fraud; it is full and fair disclosure.

---

[11] Because the 2018 Annual Report (¶¶ 129–35) was filed before the Review arose, it does not discuss the Review. However, like the later Annual Reports, it specifically warns of potential regulatory compliance issues. ¶ 134. Moreover, there is no particularized factual allegation that Cummins was aware of any alleged noncompliance with environmental standards as of 2018, which was before the Review arose and thus before Cummins began its Review of compliance.

Plaintiff nonetheless claims the above language was false or misleading because "'noncompliance issues' were already occurring." *E.g.*, ¶ 200. As a threshold matter, as explained above, the Complaint does not establish that there were noncompliance issues. *See supra* § I(B)(2)(a). Regardless, when Cummins filed the Annual Reports, there was no finding of noncompliance with regulatory standards or even an asserted claim; thus, any noncompliance would, at most, constitute an uncharged liability. The securities laws do not require a company to preemptively confess to uncharged liability or to self-accuse. *See Anderson v. Abbott Lab'ys*, 140 F. Supp. 2d 894, 906 (N.D. Ill.) ("SEC rules do not create a duty to confess contested charges."), *aff'd sub nom. Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001); *Ballan v. Wilfred Am. Edu. Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989) (no requirement for "a company's management to confess guilt to uncharged crimes, or to accuse itself of antisocial or illegal policies" (citations and quotation marks omitted)); *Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *6 (N.D. Ill. 2018) ("[S]ecurities laws generally do not impose . . . a duty upon publicly traded corporations to confess to uncharged, unadjudicated claims of wrongdoing." (citing *Anderson*, 140 F. Supp. 2d at 906)).

Instead, as a court in this Circuit explained, "[w]here there exists a good faith dispute as to facts or an alleged legal violation, the [law] only requires disclosure of the dispute" because "[a]s long as the [company] discloses to the . . . shareholders that a good faith dispute exists as to an alleged violation of law, a shareholder has sufficient information to make a rational and informed decision." *Anderson*, 140 F. Supp. 2d at 906–07 (second alteration in original) (citation omitted).[12]

---

[12] *Anderson* arose in the context of a tender offer, but the Court expressly held that the holding cited therein applies under Section 10(b). *Anderson*, 140 F. Supp. 2d at 907.

Cummins' disclosures did so.  Thus, Cummins' warnings to investors about regulatory risk were sound.[13]

**(ii)**      **Engine Certifications**

The Complaint also challenges passages from the Annual Reports appearing under a heading that reads "EU and EPA Engine Certifications" or simply "Engine Certifications" that describes in general terms the technologies used to reduce emissions and the fact that engines have received certifications by various regulatory authorities.  ¶¶ 132, 152, 166, 185, 203.  Plaintiff claims these disclosures were false because engines allegedly contained defeat devices.  ¶¶ 133, 153, 167, 186, 204.

However, the language is all truthful.  The Complaint does not allege that Cummins' engines lacked the technologies cited in the disclosures.  Nor does the Complaint allege that Cummins had not in fact obtained certifications as described in the disclosures.  Cummins' accurate disclosures concerning these matters did not create a duty to comment more broadly.  *See Anderson*, 140 F. Supp. 2d at 903 ("Merely mentioning a topic, however, does not require the company to disclose every tangentially related fact that might interest investors, only those that are sufficiently important."); *Zhou v. Desktop Metal, Inc.*, 120 F.4th 278, 294 (1st Cir. 2024). Moreover, investors also received disclosure that Cummins' process for obtaining certifications was amid a Review and under scrutiny.  Again, Cummins had no obligation to use SEC filings to preemptively confess to uncharged liability.  *See supra* § I(B)(2)(b)(i).

---

[13] There is also a timing mismatch between the Settlement and most of the Annual Reports.  The Settlement and associated DOJ and CARB complaints assert the existence of defeat devices in certain diesel trucks between 2013–19.  However, four of the five challenged Annual Reports were published in 2020 or later.  ¶¶ 148 (Annual Report filed in 2020); 162 (Annual Report filed in 2021); 181 (Annual Report filed in 2022); 199 (Annual Report filed in 2023).  So, even if the complaints were sufficient to establish the existence of defeat devices from 2013–19 (which they are not), that would not impugn Annual Reports filed in later periods.

19

### (iii)    Environmental Sustainability

Plaintiff's final challenge to the Annual Reports concerns portions addressing Cummins' environmental sustainability policies and initiatives. ¶¶ 150, 164, 183, 201. Plaintiff first challenges language from four Annual Reports referring to a plan called "PLANET 2050." The challenged language states:

> In late 2019, Cummins introduced PLANET 2050, a sustainability strategy focused on three priority areas: addressing climate change and air emissions, using natural resources in the most sustainable way and improving communities.

¶¶ 150, 164, 183, 201. The disclosures also refer to various goals of PLANET 2050. ¶¶ 150, 164, 183, 201. This language is both truthful and completely irrelevant to the diesel engine issue on which Plaintiff's claim is based. As the disclosures explain, PLANET 2050 was not created until 2019 and sets forth *forward-looking initiatives and goals to be undertaken through 2050*. *E.g.*, ¶ 201 (describing initiatives and areas of focus through the year 2050). The project thus has nothing whatsoever to do with diesel engines produced between 2013–19.

Plaintiff also challenges language from two of the Annual Reports referring to a prior environmental sustainability plan adopted in 2014. ¶ 150 (challenging statement that "[o]ur environmental sustainability plan is the way we carry out our priorities, goals and initiatives in our action areas, including reducing our carbon footprint, using fewer natural resources and partnering to solve complex problems"); ¶ 164 (challenging language describing the goals of the 2014 plan). This language is irrelevant—as is facially apparent, it is not talking about diesel engines at all. It addresses how Cummins was reducing *its own* environmental footprint in the design and manufacturing process. *E.g.*, ¶ 150 (referring to "reducing our carbon footprint").

Finally, the Complaint highlights a statement from the Annual Report covering the year 2022 that "[w]e are committed to making people's lives better by powering a more prosperous world. That prosperity includes strong communities, robust business and environmental

sustainability." ¶ 201.  This language has nothing to do with diesel engines and, in any event, is a classic example of immaterial, inactionable puffery.  *See, e.g.*, *City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) (statement that "did not make any concrete assertion" and "expressed only vague optimism" was non-actionable corporate puffery); *Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at *9 (N.D. Ill. 2022) (rejecting challenges based on company's commitments to fairness and integrity as "precisely the types of general promises and commitments that other courts have held to be immaterial puffery as a matter of law").

> **3.    Defendant Rumsey Did Not Make a Misstatement During the May 4, 2021 Earnings Call**

The Complaint challenges a comment made by Defendant Rumsey during a May 4, 2021 earnings call.  ¶ 168; Ex. 4 (Transcript of May 4, 2021 First Quarter 2021 Earnings Call).  The comment relates to a question posed by a securities analyst.  The exchange proceeded as follows (challenged portion italicized):

> **Steven Fisher (UBS Investment Bank – Analyst):**  And then just curious how – bigger picture, how you think about how natural gas fits into the picture long term.  And how does that drive the investments you're making in natural gas today?
>
> **Jennifer Rumsey (President and Chief Operating Officer):**  Yeah. So *we have a leading position today in North America with natural gas products.  And our engines in the U.S. are already certified to beat the CARB '24 ultralow NOx regulations*, so that may create some additional demand there.  And we also are offering natural gas products in other parts of the world.  So we think it's a bridge solution.  And we'll plan to continue to offer products to meet our customers' needs as a bridge between diesel engines and our future zero carbon solution.

Ex. 4 at 14.  Plaintiff claims that the italicized portion is false "because Cummins' engines did not meet the EPA and CARB's certification standard since Cummins illegally installed defeat devices in 630,000 Model Year 2013–2019 RAM 2500 and RAM 3500 trucks and was continuing to make engines for RAM 2500 and 3500 trucks with unlawful AECDs." ¶ 169.

That makes no sense. Plaintiff's theory in this case is that Cummins was violating environmental standards relating to certain *diesel engines* from 2013–19. *E.g.*, ¶ 2. But the earnings call exchange has nothing to do with that. As both the question and the answer make clear, the issue being addressed was *natural gas products*, not truck diesel engines. Moreover, the "CARB '24 ultralow NOx regulations" (which cover natural gas products) referenced in the response took effect in 2024, *see* CAL. CODE REGS. tit. 13, § 1956.8(C) (2024), whereas the DOJ Settlement concerns 2013–19—a time when the regulation referenced did not even exist.

## C.    The Complaint Fails to Plead Scienter

Plaintiff must also plead a strong inference of scienter. Plaintiff must allege with particularity facts giving rise to the required state of mind, which is "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham*, 495 F.3d at 756; *Endocyte, Inc.*, 2016 WL 51260, at *18. "Reckless" in the context of securities fraud refers to "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Endocyte, Inc.*, 2016 WL 51260, at *19 (alteration in original) (quotation omitted). Moreover, a "strong inference" of scienter must be one that a reasonable person would find "'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 951 (7th Cir. 2024) (quoting *Tellabs*, 551 U.S. at 324). "To establish the requisite scienter, a plaintiff bears the burden of either alleging facts that provide a strong inference of 'motive and opportunity to commit fraud' or alleging strong circumstantial evidence of 'conscious misbehavior or recklessness.'" *Endocyte, Inc.*, 2016 WL 51260 at *18 (quoting *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 574665, *4 (N.D. Ill. Mar. 22, 2004)).

The Complaint's scienter allegations come nowhere close to meeting this standard. Considering the high bar imposed by the PSLRA, plaintiffs typically support an inference of scienter with concrete facts probative of the state of mind of the executives who made the challenged statements—such as statements by confidential witnesses who interacted with executives, damning internal documents, or a showing that executives made suspicious stock sales. *See, e.g.*, *Pension Tr. Fund for Operating Eng'rs.*, 895 F.3d at 940 ("Perhaps suspicious stock sales could tip the balance . . . ."). This Complaint has none of that. Plaintiff unsurprisingly avoids discussing executive stock sales. The Individual Defendants each *increased* their Cummins stock holdings during the putative class period—the precise opposite of what they would do if they had lied to inflate the stock price. *See* *Zimmer Holdings, Inc.*, 673 F. Supp. 2d at 749; *City of Austin Police Ret. Sys. v. ITT Educ. Servs. Inc.*, 388 F. Supp. 2d 932, 951 (S.D. Ind. 2005). In sum, the Complaint does not cite a single percipient witness, document, or statement establishing that anyone having anything to do with preparing Cummins' disclosures intended to commit fraud.

Moreover, an inference of fraudulent intent makes no sense given the facts properly before the Court. When regulators approached Cummins in 2019 with concerns about defeat devices, consider how Cummins reacted. Cummins immediately hired external advisors to conduct a full formal review of emissions compliance—exactly the opposite of what someone hoping to conceal alleged defeat devices would do. Further, while under no legal obligation whatsoever to do so, Cummins immediately (and repeatedly) publicly disclosed the Review to investors, including that it was prompted by regulators' concerns about defeat devices—again, exactly the opposite of what someone concealing fraud would do.[14] And, all the while, the executives were *increasing* their

---

[14] *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 2011 WL 338865, at *21 (S.D. Ind. 2011) ("Defendants' openness in discussing the matter . . . actually weighs against a conclusion of scienter on their part."), *aff'd*, 679 F.3d 952 (7th Cir. 2012).

stock holdings (*see supra* § I(C))—a sure way to lose money if the goal had been to inflate the stock price fraudulently. None of that remotely describes how fraudsters act; it describes responsible executives acting in good faith to tackle a complex engineering and regulatory matter.

Indeed, Plaintiff's assertion of scienter is particularly weak given that the claim largely concerns alleged noncompliance with ASC 450, a complex accounting standard that calls for professional judgment in its application. Even if the Complaint had established noncompliance with ASC 450 (which it does not), honest accounting mistakes happen and case law is clear that scienter would require far more: "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *See In re Perrigo Company PLC Sec. Litig.,* 435 F. Supp. 3d 571, 586 (S.D.N.Y. 2020) (no scienter because "the application of GAAP to a particular set of circumstances requires the exercise of judgment"); *Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 787 (N.D. Ill. 2006); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 850 (N.D. Ill. 2003).

Ultimately, Plaintiff's claim reduces to the notion that because there was a large settlement at the end of the day, Defendants must have known that Cummins was violating environmental regulations and would incur substantial costs and penalties. This is classic, impermissible fraud by hindsight. *See, e.g.*, *Pugh v. Trib. Co.*, 521 F.3d 686, 694 (7th Cir. 2008). Unsurprisingly, the few specifics cited in the Complaint do not come close to establishing scienter as to any Defendant.

### 1. The 2016 Consumer Class Action's Testing of NOx Emissions in 2012–17 Vehicles Does Not Imply Knowledge Regarding 2019–23 Statements

Plaintiff first alleges that the 2016 consumer class action put the Individual Defendants on notice of NOx emissions violations in RAM 2500 and 3500 trucks because those plaintiffs conducted their own tests which showed excess NOx emissions. ¶¶ 209–11. But there is a timing mismatch. The plaintiffs in the 2016 consumer class action tested *2007–12* models of trucks, not

the 2019–23 engines that Cummins manufactured and sold *more than seven years later*.  ¶ 52.  The temporal mismatch is even more stark because, as Plaintiff concedes, Cummins had developed a new calibration emissions system for the 2019 RAM 2500 and 3500 trucks.  ¶ 121; *see Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp*, 2022 WL 1642221, at *21 (N.D. Ill. 2022) (knowledge of events occurring in 2010–16 not enough to support strong inference that statements made between 2016–20 were knowingly false); *Smallen v. W. Union Co.*, 950 F.3d 1297, 1314 (10th Cir. 2020) (2010 statement indicating knowledge of specific fraudulent activity in 2010 not enough to support scienter as to statements about legal compliance in 2012).

Plaintiff also alleges that the fines paid by Volkswagen in 2017, Fiat Chrysler in 2019, and Daimler AG 2020, "should have been a huge red flag for Defendants."  ¶ 210.  But those settlements were markedly different.  For example, concurrently with its settlement, Volkswagen pled guilty to criminal charges related to emissions fraud.  *See* Ex. 5 (Plea Agreement, *United States v. Volkswagen AG*, 2:16-cr-20394 (E.D. Mich. Mar. 10, 2017)).  The Chrysler and Daimler settlements involved different vehicles and different time frames.  *See* Ex. 6 (Consent Decree, *In re: Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 3:17-md-02777, at 21 (N.D. Cal. Jan. 10, 2019) (defining vehicles subject to settlement); Ex. 7 (Consent Decree, *United States v. Daimler AG*, 1:20-cv-02564, at 21 (D.D.C. Mar. 9, 2021) (same)).  By the time they announced the settlements, the Company had already disclosed the Inquiry and instituted a comprehensive Review—the opposite of what someone would do if engaging in fraud.  That other manufacturers faced regulatory scrutiny related to defeat devices does not suggest that Defendants knew or acted in reckless disregard of a substantial risk that any of their statements were false.  *See, e.g.*, *Tian v. Peloton Interactive, Inc.*, 2025 WL 510043, at *15 (E.D.N.Y. Feb. 14, 2025)

("Unrelated settlements and investigations or recalls by other companies do not support an inference of scienter.").

### 2. Speaking Generally on a Topic Does Not Plead Knowledge of Falsity

Plaintiff also alleges that each Individual Defendant showed knowledge about the progress of the EPA/DOJ and CARB investigations by discussing them on Cummins earnings calls and, therefore, must have known that certain statements were false when made. ¶¶ 212–14, 220. This proves too much. If making a statement automatically permits an inference of scienter, then scienter would always be present. *Cf. Zebra Techs. Corp.*, 8 F.4th at 596 ("The plausibility of potential inferences [of scienter] depends on *context*." (emphasis added)). And, in any event, none of the statements suggests knowledge of facts supporting an inference of scienter. Linebarger's April 30, 2019 Earnings Call statement that Cummins would "work with urgency" to complete the Review and would "quantify" any 2019 potential earnings impact "as quickly as we can," ¶ 213, does not suggest that Linebarger had knowledge that a claim would be brought or when, let alone "the nature of the contingency" and "[a]n estimate of the possible loss or range of loss. . . ." ¶ 110; Ex. 1 (ASC 450-20-50-4). The fact that the Company had *just* publicly disclosed the Review a day before the call, ¶ 57, renders any inference that Linebarger knew of a loss contingency that was "possible" and "estimable" under ASC 450 fantastical. Indeed, the Complaint concedes that the Company's Review took over four years to conclude (and expanded in scope) even with the help of outside advisors. ¶¶ 57, 145–46, 174, 188, 206–07. The only cogent inference is that Linebarger earnestly and truthfully expressed urgency and intent to quantify the Review, when possible. Similarly, Linebarger's statement says nothing about emissions compliance, sustainability, or engine certification for engines manufactured and sold between 2019 and 2023.

Plaintiff cites Linebarger's statement on the same April 2019 call that Cummins does its "own (emissions) test and evaluations," and claims this statement confirms the Individual

Defendants had access to emissions testing data.  ¶¶ 215–16.  But even if Defendants had access to emissions data, the Complaint never even alleges that any Defendant ever received or reviewed such data, that the data would have shown issues, nor that they actually had knowledge of any issues based on that data, that would render any statement false or misleading.  *See Zimmer Holdings, Inc.*, 673 F. Supp. 2d at 746 ("Plaintiff must allege actual knowledge by the defendant, not some second-hand belief that such knowledge existed . . . ."); *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1168 (E.D. Wis. 2017) ("[A]llegations that the defendants had access to information alerting them to the falsity of their public statements are not sufficient to give rise to a strong inference that the defendants acted with the state of mind required by the PSLRA."), *aff'd*, 895 F.3d 933 (7th Cir. 2018).

Nor do Defendants Smith and Rumsey's statements on the May 2023 Earnings Call that EPA and CARB would likely propose to resolve the Review with one or more consent decrees and certain civil penalties suggest that either Smith or Rumsey had knowledge of an estimate of a possible loss or range of loss.  ¶ 220.  The statements, by their terms, show that CARB and EPA had not *yet* proposed *any* range of civil penalties.  The better inference is that Smith and Rumsey could not have reasonably estimated any loss because no settlement range had been proposed yet.

### 3.    The DOJ and CARB Complaints Do Not Support Scienter

Plaintiff also relies on statements from the DOJ/EPA and CARB complaints that "Cummins *knew or should have known* [about] the undisclosed AECDs installed in the 2013–2019 RAMs . . . ." ¶¶ 217–18.  These are simply allegations, not findings, and courts routinely disregard these statements as immaterial under Rule 12(f) and do not consider them on a motion to dismiss. *See supra* § I(B)(2)(a). This is even more true here, where Cummins did not admit to any wrongdoing as part of the Settlement.  *Id.*; *see Lipsky*, 551 F.2d at 893–94.  But even if the Complaint had pled these allegations, such conclusory allegations would be insufficient to raise a

strong inference of scienter.  *See Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 775–76 (N.D. Ill. 2010) ("[P]laintiffs' repeated allegations that the defendants 'knew' and 'knew or should have known' of the falsity of the alleged misrepresentation and omissions" were "conclusory and insufficient to satisfy scienter.").

### 4.    Purported Statements to Analysts Do Not Plead Scienter

Plaintiff also cites JP Morgan and Evercore analyst reports from the day that the Settlement was announced reporting that Cummins' management told them that the Settlement was "within [their] range of expectations" and that the "size [of the settlement] didn't necessarily surprise them."  ¶¶ 92 (JP Morgan), 93 (Evercore).  But, as explained above (*supra* § I(B)(1)(b)(ii)) this does not even specify who in "management" was not surprised, nor does it disclose *when* their views were formed.  *See In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 932 (S.D. Ind. 2008), *aff'd sub nom. Fannon v. Guidant Corp.*, 583 F.3d 995 (7th Cir. 2009); *Zimmer Holdings, Inc.*, 673 F. Supp. 2d at 747.  Moreover, it is one thing to have a general range of subjective expectations; it is quite another to be able to provide a reasonable estimate of loss in accordance with an accounting standard.

### 5.    Job Titles Do Not Plead Knowledge

Finally, Plaintiff resorts to "scienter by status," alleging that Rumsey was Cummins' CEO and Smith was Cummins' CFO.  ¶¶ 222–23.  Defendants' "'respective positions within the company prove nothing about fraud or knowledge thereof but rather are exactly the type of generalized allegations the court must disregard under the' PSLRA."  *Zimmer Holdings, Inc.*, 673 F. Supp. 2d at 746–47 (citation omitted).  Allegations attempting to confer knowledge by way of access to information have similarly been rejected as insufficient to plead scienter.  *See id.* at 746 ("[A] pleading of scienter may not rest on the inference that defendants must have been aware of [information] based on their positions within the company." (quotation omitted)); *see also Pugh,*

28

521 F.3d at 694. Such allegations "rely on conclusory assertions of the defendants' status," and "attempt precisely the sort of 'end-run' around the particularity requirement that courts have rejected." *Chew v. MoneyGram Int'l, Inc.*, 2024 WL 4346522, at *19 (N.D. Ill. 2024). The Southern District of Indiana has held that such "must have known" allegations do not suffice. *In re Brightpoint, Inc. Sec. Litig.*, 2001 WL 395752, at *20 (S.D. Ind. 2001); *Hunter v. Elanco Animal Health Inc.*, 2022 WL 3445173, at *21 (S.D. Ind. 2022). Thus, the Court should hold that the Complaint fails to establish a strong inference of scienter.

### D.    Plaintiff Lacks Standing as to Post-Purchase Statements

Even if the timing of Plaintiff's stock sale did not entirely foreclose his claim (which it does) and Plaintiff had adequately pled falsity and scienter (he does not), the timing of his *purchases* would narrow his claim. "[P]ost-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased." *Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992). Thus, courts hold that plaintiffs lack standing to bring a Rule 10b-5 claim "based on allegedly false statements made by defendants after plaintiff purchased the defendant company's stock," and limit fraud claims to "losses allegedly tied to statements made prior to [the plaintiff's] purchase of securities."[15] *In re Inotiv, Inc. Sec. Litig.*, 2024 WL 1344784, at *33 (N.D. Ind. 2024); *Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, *33–34 (N.D. Ill. 2022); *Zimmer Holdings, Inc.*, 673 F. Supp. 2d at 732; *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 705–06 (N.D. Ill. 2005) (collecting cases). Therefore, if the Court does not dismiss the case altogether, it should dismiss claims

---

[15] Plaintiff cannot escape this result by arguing he purports to assert class claims on behalf of later purchasers. *See, e.g.*, *Zimmer Holdings Inc.*, 673 F. Supp. 2d at 732; *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d at 925.

challenging disclosures after Plaintiff's last purchase (June 3, 2021).  This would require dismissal of Plaintiff's claim based on Quarterly Reports and Annual Reports filed in and after June 2021.

## II.    <u>The Complaint Fails to State a Claim Under Section 20(a) (Count II)</u>

Because Plaintiff has failed to plead a viable Section 10(b) claim, the Section 20(a) control person claim must also be dismissed.  *Pugh*, 521 F.3d at 693 ("[T]o state a claim under § 20(a), a plaintiff must first adequately plead a primary violation of securities laws . . . ."); *In re Brightpoint, Inc. Sec. Litig.*, 2001 WL 395752, at *29 (same).

**CONCLUSION**

The Court should dismiss the Complaint.  Moreover, dismissal should be with prejudice. Regardless of whether Plaintiff could attempt to replead to address falsity and scienter, his purchase-and-sale pattern forecloses him from ever pleading loss causation.

Dated: May 23, 2025                               Respectfully submitted,

                                                     */s/ Michael G. Bongiorno*
                                                     Michael G. Bongiorno (*pro hac vice*)
      Timothy J. Perla (*pro hac vice*)
      Sonia Sujanani (*pro hac vice*)
      **WILMER CUTLER PICKERING**
         **HALE & DORR LLP**
      60 State Street
      Boston, Massachusetts
      Telephone: (617) 526-6145
      Email: michael.bongiorno@wilmerhale.com
      Email: timothy.perla@wilmerhale.com
      Email: sonia.sujanani@wilmerhale.com

      Paul A. Wolfla, Atty No. 24709–49
      **FAEGRE DRINKER**
         **BIDDLE & REATH LLP**
      300 N. Meridian Street, Suite 2500
      Indianapolis, IN 46204
      Telephone: (317) 237-1241
      Fax: (317) 237-1000
      Email: paul.wolfla@faegredrinker.com

*Attorneys for Cummins and the Individual Defendants*

**APPENDIX A:  CHALLENGED DOCUMENTS**

|    | Date | Document | Compl. | Challenge(s) |
|----|------|----------|--------|--------------|
| 1  | Feb. 11, 2019 | Annual Report | ¶¶ 129–35 | Reg. compliance |
| 2  | Jul. 30, 2019 | Quarterly Report | ¶¶ 136–39 | Loss contingency |
| 3  | Oct. 29, 2019 | Quarterly Report | ¶¶ 140–43 | Loss contingency |
| 4  | Feb. 11, 2020 | Annual Report | ¶¶ 144–53 | Loss contingency; Reg. compliance; Sustainability; Env. Certification |
| 5  | Apr. 28, 2020 | Quarterly Report | ¶¶ 154–57 | Loss contingency |
| 6  | Jul. 28, 2020 | Quarterly Report | ¶¶ 154–57 | Loss contingency |
| 7  | Oct. 27, 2020 | Quarterly Report | ¶¶ 154–57 | Loss contingency |
| 8  | Feb. 10, 2021 | Annual Report | ¶¶ 158–67 | Loss contingency; Reg. compliance; Sustainability; Env. Certification |
| 9  | May 4, 2021 | Earnings Call | ¶¶ 168–69 | Env. Certification |
| 10 | May 4, 2021 | Quarterly Report | ¶¶ 170–76 | Loss contingency |
| 11 | Aug. 3, 2021 | Quarterly Report | ¶¶ 170–76 | Loss contingency |
| 12 | Nov. 2, 2021 | Quarterly Report | ¶¶ 170–76 | Loss contingency |
| 13 | Feb. 8, 2022 | Annual Report | ¶¶ 177–86 | Loss contingency; Reg. compliance; Sustainability; Env. Certification |
| 14 | May 3, 2022 | Quarterly Report | ¶¶ 187–90 | Loss contingency |
| 15 | Aug. 3, 2022 | Quarterly Report | ¶¶ 187–90 | Loss contingency |
| 16 | Nov. 4, 2022 | Quarterly Report | ¶¶ 191–94 | Loss contingency |
| 17 | Feb. 14, 2023 | Annual Report | ¶¶ 195–204 | Loss contingency; Reg. compliance; Sustainability; Env. Certification |
| 18 | May 2, 2023 | Quarterly Report | ¶¶ 205–08 | Loss contingency |
| 19 | Aug. 3, 2023 | Quarterly Report | ¶¶ 205–08 | Loss contingency |
| 20 | Nov. 2, 2023 | Quarterly Report | ¶¶ 205–08 | Loss contingency |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 23, 2025, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to the following parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

Brian B. Alexander
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: BAlexander@RosenLegal.com

Eric S. Pavlack
Colin E. Flora
PAVLACK LAW, LLC
50 E. 91st St., Ste. 305
Indianapolis, IN 46240
Telephone: (317) 251-1100
Fax: (317) 252-0352
Email: Eric@PavlackLawFirm.com
Email: Colin@PavlackLawFirm.com

*/s/ Michael G. Bongiorno*
Michael G. Bongiorno