**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| TOM BAKER, Individually and On Behalf of All Others Similarly Situated, | CASE NO.: 1:25-cv-00430-TWP-MKK |
| Plaintiff, | CLASS ACTION |
| v. | |
| CUMMINS INC., N. THOMAS LINEBARGER, JENNIFER RUMSEY, and MARK A. SMITH, | |
| Defendants. | |

**DECLARATION OF BRIAN ALEXANDER IN SUPPORT OF MOTIONS FOR: (I) FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT; AND (II) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

I, Brian Alexander, hereby declare as follows:

1. I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Richard Kraemer ("Lead Plaintiff" or "Kraemer").[1] I am familiar with the proceedings in this litigation, and I have personal knowledge of the matters set forth herein and can competently testify thereto. I have been actively involved in all aspects of the prosecution of the Action and am familiar with its proceedings.

2. This Declaration and the accompanying memoranda of law discuss several documents, true and correct copies of which are attached as Exhibits hereto as follows:

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as specified in the Stipulation of Settlement ("Stipulation") filed on December 8, 2025 (Dkt. No. 95) or the Amended Class Action Complaint for the Violation of the Federal Securities Laws ("Complaint") (Dkt. No. 78).

1

| Exhibit 1 | Declaration of Josephine Bravata Concerning: (A) Emailing Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
|---|---|
| Exhibit 2 | Declaration of John R. Van Winkle |
| Exhibit 3 | Declaration of Lead Plaintiff Richard Kraemer |
| Exhibit 4 | Excerpts from a report published by the National Economic Research Associates, Inc. ("NERA"), authored by Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) |
| Exhibit 5 | The Rosen Law Firm, P.A.'s Firm Resume |
| Exhibit 6 | Declaration of Eric S. Pavlack on behalf of Pavlack Law, LLC Concerning Attorneys' Fees |

3.     I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Fee Motion"). As set forth in the Memorandum of Law in Support of Lead Plaintiff's Motions for Final Approval of Class Action Settlement ("Final Approval Memorandum"), Lead Plaintiff seeks final approval of the $1,600,000 Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

4.     As set forth in the Memorandum of Law in Support of the Lead Plaintiff's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff, ("Fee Memorandum"), Lead Counsel seeks an award of attorneys' fees in the amount of 30% of the Settlement Fund, plus interest, and reimbursement of litigation expenses of $61,403.27, plus interest, and an Award to Lead Plaintiff of $5,000, pursuant to the Private Securities Litigation

2

Reform Act of 1995 ("PSLRA"), for the time he devoted to his representation of the Settlement Class.

5.      The Court preliminarily approved the proposed Settlement by Order dated December 15, 2025 (the "Preliminary Approval Order") (Dkt. No. 99) and thereby directed notice of the Settlement to be disseminated to the Settlement Class. Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program under Lead Counsel's direction, whereby notice was given to potential Settlement Class Members by email and by publication and in some circumstances, by mail.

6.      In total, 123,798 notices were disseminated to potential Settlement Class Members by emailing links of the Settlement website where the Long Notice and Claim Form are located or by mailed Long Notice and Claim Form. To date, two valid requests and one invalid request for exclusion have been received and no objections have been filed or received.

7.      The Action asserts claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against Defendants Cummins Inc. ("Cummins" or the "Company"), N. Thomas Linebarger, Jennifer Rumsey, and Mark A. Smith (collectively, "Defendants").

8.      The proposed Settlement provides for the resolution of all claims against Defendants in exchange for a non-reversionary, cash payment of $1,600,000 (the "Settlement Amount"). As detailed herein, Lead Plaintiff and Lead Counsel submit that the proposed Settlement represents a highly favorable result for the Settlement Class considering the risks of continued litigation.

9.      The Settlement was negotiated by experienced counsel, who were well aware of

the strengths and weaknesses of the case, including falsity, scienter, and loss causation issues.

10.    Lead Plaintiff entered into the proposed Settlement only after an extensive investigation and engaging in a mediation that informed him and Lead Counsel as to the strengths and weaknesses of the case. The Settlement is, therefore, the result of arm's length negotiations between and among well-informed, highly experienced counsel.

11.    Based on the foregoing efforts, Lead Plaintiff and Lead Counsel believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of its members. For all the reasons set forth herein and in the accompanying memoranda and declarations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

12.    In addition, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable. As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages expert. The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts, and similar plans have been repeatedly approved by the courts.

13.    Finally, Lead Plaintiff seeks approval of Lead Counsel's request for attorneys' fees, reimbursement of litigation expenses, and Award to Lead Plaintiff. As discussed in detail in the accompanying Fee Memorandum, the requested 30% fee is a reasonable approximation of the fair market price. This request is respectfully warranted in light of the extent and quality of the work performed and the considerable result achieved. Likewise, the requested out-of-pocket litigation costs of $61,403.27 and the requested PSLRA award of $5,000 to Lead Plaintiff are also fair and

reasonable. Accordingly, for the reasons set forth in the Fee Memorandum and for the additional reasons set forth herein, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## I.    PROSECUTION OF THE ACTION

### A.    Factual Background

14.    Lead Plaintiff alleges that Defendants violated the Sections 10(b) and 20(a) of the Exchange Act by making false and misleading statements during the Class Period of February 11, 2019 to December 21, 2023, inclusive. Complaint, Dkt. No. 78 at ¶1.  In particular, the Complaint alleges that Defendants, despite installing defeat devices in certain vehicles that did not comply with the Environmental Protection Agency's ("EPA") and California Air Resource Board's ("CARB") standards, told investors that they prohibited the use of such defeat devices in Cummins' products. *Id.* ¶5. The Complaint further alleges, among other things, that after Cummins disclosed it was being investigated by EPA and CARB for installing defeat devices, it did not adequately disclose the loss contingency for those investigations. *Id.* ¶6. When Cummins announced that it was paying a large fine to resolve the EPA and CARB investigations, Cummins' stock dropped, which allegedly harmed investors by revealing that their statements during the Class Period were false. *Id.* ¶¶7-10.

### B.    Procedural Background

15.    This Action was initially filed on January 15, 2024 in the United States District Court for the Central District of California asserting violations under Sections 10(b) and 20(a) of the Exchange Act, styled as *Baker v. Cummins Inc.*, et al., Case No. 2:24-cv-00369 (C.D. Cal.). (Dkt. No. 1).

16.    On March 15, 2024, Kraemer filed a motion to be appointed lead plaintiff and to

approve his selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 11). No other Cummins shareholders filed a competing motion for appointment as lead plaintiff or filed any parallel complaints. On October 3, 2024, Judge Maame Ewusi-Mensah Frimpong held a telephonic hearing on Kraemer's lead plaintiff and lead counsel motion. (Dkt. No. 30). That same day, Judge Frimpong entered an order stating that Kraemer was the presumptive lead plaintiff, but ordered him and Tom Baker (who initiated the Action) to publish an updated notice pursuant to the PSLRA regarding the litigation. (Dkt. No. 32). Rosen Law timely issued the updated PSLRA notice on Kraemer and Baker's behalf. (Dkt. No. 34).

17. On January 6, 2025, Defendants filed a Consented Motion to Transfer Venue. (Dkt. No. 36). On February 25, 2025, since no additional Cummins shareholders moved for appointment as lead plaintiff,  Judge Frimpong appointed Kraemer as Lead Plaintiff and approved his selection of Rosen Law as Lead Counsel. (Dkt. No. 38). On March 4, 2025, Judge Frimpong granted the Consented Motion to Transfer Venue and the Action was transferred to this Court on March 5, 2025. (Dkt. Nos. 39, 40).

18. On March 26, 2025, Lead Plaintiff and Defendants each filed their Local Rule 16-2 Statement of Position After Transfer. (Dkt. Nos. 60, 61). The Parties then filed a Joint Motion for Establishment of Interim Schedule and for Relief from Obligation Imposed by Rule 16-1(c) on March 28, 2025. (Dkt. No. 62). On April 2, 2025, the Parties filed a Joint Status Report and the Court held a Telephonic Status Conference and entered the Parties' proposed schedule on April 7, 2025. (Dkt. Nos. 67, 71, 74). On April 25, 2025, Lead Plaintiff filed the operative, Complaint. (Dkt. No. 78). Defendants filed a motion to dismiss on May 23, 2025. (Dkt. Nos. 79-81). Lead Plaintiff filed several unopposed motions for extension of time to respond to the Motion to Dismiss, that were each granted. (Dkt. Nos. 82-85, 88-89).

**C.      Settlement Negotiations**

19.      On September 25, 2025, the Parties participated in a virtual mediation session with John R. Van Winkle of Van Winkle Baten Dispute Resolution of Carmel, Indiana. Prior to the mediation session, the Parties exchanged and submitted detailed confidential mediation statements to Mr. Van Winkle. After engaging in a vigorous exchange of views, Mr. Van Winkle issued a mediator's proposal that the Parties accepted to settle this Action in its entirety for $1,600,000. On October 9, 2025, with Defendants' permission, Lead Plaintiff filed a Notice of Preliminary Settlement. (Dkt. No. 90).

**D.      Preliminary Approval of Settlement**

20.      On December 8, 2025, Lead Plaintiff filed the Stipulation along with his Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") and supporting documents. (Dkt. Nos. 95-98).

21.      On December 15, 2025, the Court entered the Preliminary Approval Order, approving SCS as the Claims Administrator and setting the Settlement Fairness Hearing for May 21, 2026. (Dkt. No. 99).

22.      The Preliminary Approval Order further approved the form, substance and requirements of the Long Notice, Claim Form, and Summary Notice, as well as the Parties' proposed plan for providing notice to the Settlement Class. The Court found the proposed notice plan as: (a) constituting the best notice to Settlement Class Members practicable under the circumstances; (b) reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement or to exclude themselves from the Settlement Class; (c) reasonable and constituting due, adequate, and sufficient notice to all Persons entitled to receive such notice; and

7

(d) satisfying all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, and the Rules of this Court. Preliminary Approval Order. Preliminary Approval Order, ¶20.

## II.    CLAIMS ADMINISTRATOR ISSUED NOTICE TO THE SETTLEMENT CLASS PURSUANT TO THE PRELIMINARY APPROVAL ORDER

23.    The Preliminary Approval Order directed SCS, under Lead Counsel's direction, to: (i) post the Long Notice and Claim Form on a website for the Settlement; (ii) email links to the Long Notice and Claim Form to Settlement Class Members for whom SCS is able to obtain email addresses with reasonable effort; and (iii) publish the Summary Notice four times through various newswires. Preliminary Approval Order, ¶¶15-17, 19.

24.    The Court-approved notice disclosed, among other things, the following information to Settlement Class Members: (a) a summary of the Settlement, including the $1,600,000 Settlement Amount; (b) that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount plus interest, reimbursement of actual expenses up to $95,000, and an award to Lead Plaintiff of up to $5,000; (c) the details of the Plan of Allocation; (d) that any Settlement Class Member could object to any aspect of the Settlement including the requested attorneys' fees, reimbursement of the litigation expenses and award to Lead Plaintiff; (e) an explanation of the reasons for the Settlement; (f) that requests for exclusion from or objections to the Settlement must be submitted to the Claims Administrator no later than April 23, 2026; and (h) that the deadline for submitting a Claim Form was the same. The notice is attached as Exhibits A and D to the Declaration of Josephine Bravata Concerning: (A) Emailing Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and

Objections. ("Bravata Decl.") (Ex. 1).

25.     To disseminate the notice, SCS contacted Nominee Account Holders, received Cummins' transfer agent records, and a list of Cummins investors who previously contacted Lead Counsel. *Id*., ¶¶6-8. In total, 123,798 notices were sent to potential Settlement Class Members by emailed link to the Settlement webpage or mailed Long Notice and Claim Form. *Id*., ¶12.

26.     By January 15, 2026, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be transmitted over *GlobeNewswire*, the first of the electronic publications required by the Preliminary Approval Order. Bravata Decl., ¶14. In total, the Summary Notice was electronically disseminated six times. *Id*. Twice over *GlobeNewswire's* Class Action circuit, twice over *GlobeNewswire's* USA National circuit, once over *ACCESSWIRE*, and once over *Newsfile*. *Id*. Confirmations of the publication of the Summary Notice are attached as Exhibit D to the Bravata Declaration.

27.     Lead Counsel also caused SCS to establish the dedicated Settlement Website, which was in operation by January 2, 2026, to provide potential Settlement Class Members with information concerning the Settlement, including: exclusion, objection, and claim-filing deadlines for the case; the online claim filing link; the date and time of the Settlement Hearing; and downloadable versions of the Long Notice and Claim Form, as well as copies of the Stipulation and Preliminary Approval Order. *Id.* ¶16.

28.     SCS also maintains a toll-free telephone number for potential Settlement Class Members to call and obtain information about the Settlement and/or request the link to the Long Notice and Claim Form. SCS promptly responds to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries. *Id.* ¶15.

29.     As set forth above, the notice informed potential Settlement Class Members that

the deadline to request exclusion from the Settlement Class is April 23, 2026. The deadline to object to the Settlement, Plan of Allocation and/or requests for attorneys' fees, reimbursement of litigation expenses, and Award to Lead Plaintiff is also April 23, 2026. To date, no Settlement Class Members have objected to any aspect of the Settlement. *Id.* ¶18. To date, two valid requests for exclusion from the Settlement Clas has been received. *Id.* ¶17. These two requests are from two Cummins shareholders who collectively purchased 87 shares of Cummins stock during the Class Period. Thus, these exclusion requests are minimal. SCS also received another request for exclusion from an individual, however, this request did not follow the instructions detailed in the notice and lacked information and documentation necessary to determine when he purchased his Cummins stock. *Id*. SCS contacted this individual, notifying him of the inadequacy of the request, but has not received a response. *Id*. Lead Plaintiff's reply papers in support of the Final Approval Motion and Fee Motion, due on May 14, 2026, shall address any objections or any additional requests for exclusion that may be received.

## III.    THE RISKS OF CONTINUED LITIGATION

30.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a non-reversionary cash payment of $1,600,000. As explained below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case were to proceed through additional litigation to a jury trial, followed by the inevitable appeals. Prior to trial and appeal, Lead Plaintiff faced significant litigation risks. Thus, there was no guarantee that Lead Plaintiff and the Settlement Class would later achieve any recovery, let alone one greater than the Settlement Amount.

### A.    The Complexity, Expense, and Duration of Litigation

31.    In the absence of the Settlement, the Action would require reviving Defendants' motion to dismiss, extensive fact and expert discovery, as well as, litigating class certification, summary judgment, and *Daubert* motions, followed by proving Lead Plaintiff's claims at trial, post-trial motions, and appeals.

### B.    Risks to Proving Liability and Damages

32.    Lead Plaintiff's claims have not yet survived a motion to dismiss and, even if they did, Lead Plaintiff would still need to prove — not merely allege — his claims.

33.    Defendants' contentions posed a significant risk to establishing liability had the litigation continued. Indeed, despite believing that the Action is meritorious, Lead Plaintiff and Lead Counsel were well aware of the high hurdles they would have to surmount in order to successfully prove that Defendants actually violated the securities laws. In particular, Lead Plaintiff and Lead Counsel knew that they faced challenges proving falsity, scienter, loss causation and damages, and class certification.

34.    It will be difficult to prove falsity because Defendants argued that they were under not obligation to disclose the government investigations and that, even if disclosure was required, Cummins' disclosures satisfied the requirements of Accounting Standards Codification ("ASC") 450. Dkt. No. 80, 9-12. They contend that Cummins consistently was unable to "estimate the financial impact of these matters" and accordingly was not legally required to estimate potential losses from the investigations, as ASC 450 allows companies to state that an estimate cannot be made when the financial impact is uncertain. *Id.* at 12-13. Additionally, Defendants argue that their statements regarding regulatory compliance, engine certifications, and environmental sustainability were truthful and not misleading for a variety of other reasons. *Id.* at 16-21. Finally,

11

Defendants claim that the allegations made by the Department of Justice ("DOJ") and the CARB cannot be used to establish falsity. *Id.* at 15-16.

35.    It will also be difficult for Lead Plaintiff to prove scienter. Proving a strong inference of scienter requires particularized facts showing an intent to deceive or a reckless disregard for the truth. *Id.* at 22-23. Defendants emphasized that Lead Plaintiff failed to cite any confidential witnesses, internal documents, or suspicious stock sales to support an inference of fraudulent intent. *Id.* They also argue that Cummins acted in good faith by promptly disclosing its emissions compliance review and the government investigations and by hiring external advisors. *Id.* Defendants further contend that the Complaint's allegations that Defendants should have been aware that their statements concerning loss contingency were misleading based on the settlements of other companies were unpersuasive because those settlements were easily distinguishable. *Id.* at 24-26. They further argue that the statements Defendants made about the investigations were too general to establish falsity and that the Complaint cannot rely on the positions of the Individual Defendants to establish scienter. *Id.* at 26-29.

36.    Even assuming Lead Plaintiff overcame the above risks and established liability, Lead Plaintiff would have confronted considerable challenges in litigating loss causation and class-wide damages, as the price of Cummins stock rose soon after the truth was disclosed, limiting investor damages. Moreover, if damages were ultimately contested, both sides would have used experts to support their respective positions. The inevitable "battle of the experts" at class certification, summary judgment, and trial creates substantial litigation risk because there can be no assurance as to which party's expert a jury will find more persuasive.

37.    While Lead Counsel believe that Rule 23's requirements would have been satisfied and a class would be certified, Lead Plaintiff bears the burden of proof on class certification and

12

Defendants would have undoubtedly raised arguments challenging the propriety of class certification. Moreover, even if Lead Plaintiff successfully obtained class certification, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f), further delaying or precluding any potential recovery. Additionally, even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. Class certification was, by no means, a forgone conclusion.

38.    Accordingly, if the case was litigated and if Lead Plaintiff prevailed, there was a significant risk that the Settlement Class would have received less money than provided for in the Settlement.

**C.    The Settlement is Reasonable in Light of the Maximum Potential Recovery**

39.    Lead Plaintiff's damages expert estimates that maximum alleged damages were approximately $36 million. Accordingly, the Settlement offers a recovery of 4.44% of the maximum estimated damages. This is several times more than the 2024 securities class actions median ratio of 1.2% settlement to investor losses for Exchange Act cases as determined by NERA. *See* Ex. 4. The Settlement's recovery is also higher than the historical median, which between 2015 and 2024, has ranged between 1.2% and 2.5%. *Id.*

40.    Having evaluated the relative strengths and weaknesses of the Action in light of Defendants' arguments, and considering the very real risks presented by continued litigation, it is my informed judgment, based on all of the proceedings to date and my extensive experience in litigating class actions under the federal securities laws, that the proposed Settlement is fair, reasonable, and adequate and in the Settlement Class's best interest.

## IV.    THE PLAN OF ALLOCATION

41.    Pursuant to the Preliminary Approval Order, and as set forth in the notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, by April 23, 2026. Ex. A and D to Bravata Decl. As provided in the notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Costs, and Taxes and Tax Expenses, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court. *Id.*, Ex. A. (Long Notice and Claim Form) at 1, 4.

42.    The proposed Plan of Allocation, which is set forth in full in the Long Notice (*id.* at 4-6), was designed to achieve an equitable and rational distribution of the Net Settlement Fund. Lead Counsel developed the Plan of Allocation in close consultation with Lead Plaintiff's damages expert, and believe that the plan provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

43.    Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss for each Settlement Class Member who purchased publicly-traded Cummins common stock between February 11, 2019 and December 21, 2023, both dates inclusive. Each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement — his, her, or its Recognized Loss divided by the total of Recognized Loss of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund and in accordance with each type of claim's allocation. *Id.* at 5-6.

44.    Calculation of Recognized Claims will depend upon several factors, including how many shares of Cummins common stock the Claimant purchased, acquired, or sold during the Class Period, when the Claimant bought, acquired, or sold the shares, and the number of valid

claims filed by other Claimants.

45.      Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will distribute the Net Settlement Fund. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of initial distribution, Lead Counsel will, if cost effective, re-distribute the balance among Authorized Claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not cost effective to reallocate, after payment of any outstanding Notice and Administration Costs or Taxes and Tax Expenses, will be contributed to a non-profit organization. Stipulation ¶6.6.

46.      In sum, the proposed Plan of Allocation, developed in consultation with Lead Plaintiff's damages expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Plaintiff and Lead Counsel believe the proposed Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## V.      LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES.

47.      In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying for a fee award of 30% of the Settlement Amount plus interest at the same rate earned by the Settlement Fund. Lead Counsel also requests reimbursement of litigation expenses from the Settlement Fund in the amount of $61,403.27, plus interest at the same rate earned by the Settlement Fund. The requested litigation expenses are well below the maximum amount of $95,000 set forth in the notice.

48.    As set forth in the accompanying Fee Motion, the percentage-of-the-recovery method is the best method for determining a fair attorneys' fee award from the common fund. Unlike the lodestar method, awarding a percentage aligns the lawyers' interest with that of the Settlement Class in achieving the maximum recovery. The lawyers are motivated to achieve highest recovery in the shortest amount of time required under the circumstances. Accordingly, the percentage-of-the-fund method has been recognized as appropriate by the Supreme Court, the Seventh Circuit, and the PSLRA itself for cases of this nature.  Furthermore, as set forth below, though not required in the Seventh Circuit, Lead Counsel also respectfully submits that the requested fee is fully supported by a "lodestar multiplier cross-check."

**A.    The Favorable Settlement Outcome is the Result of Significant Time and Labor that Lead Counsel Devoted to this Action**

49.    Rosen Law has been involved in this litigation since they initiated the Action in January 2024, continuing throughout all other aspects of the litigation. Lead Counsel's efforts, on behalf of the Settlement Class, included, among other things:

(i)      reviewing Defendant's public filings, testimony, and news reports;

(ii)     retaining a private investigator who interviewed potential witnesses;

(iii)    consulting with an accounting expert to craft allegations concerning Cummins' disclosures;

(iv)    requesting documents and information pursuant to a Freedom of Information Act ("FOIA") to the EPA and to the DOJ;

(v)     requesting documents from CARB and the Office of the Attorney General of the State of California pursuant to the California Public Records Act (the "CPRA");

(vi)    reviewing documents produced by CARB pursuant to CPRA;

(vii)   drafting the initial and detailed, operative Complaint based on the gathered information and investigation;

(viii)  preparing a detailed pre-mediation submission;

16

(ix)     engaging in vigorous arm's-length settlement discussions through Mr. Van Winkle;

(x)      consulting with an expert regarding a damages estimate and to create a plan of allocation that treats all other members of the proposed Settlement Class fairly;

(xi)     negotiating and drafting the terms of the Stipulation and the documents in support of the Preliminary Approval Motion; and

(xii)    drafting the Final Approval Motion along with supporting documents.

50.     Lead Counsel, Rosen Law, expended a total of 803 hours litigating the Action, resulting in a lodestar of $1,026,408.80. The chart below is a summary of time expended by attorneys and paralegals at Rosen Law on the Action through April 15, 2026, based on current hourly rates. These rates are set based on market rates for attorneys of comparable skills and experience, and they have been approved by courts throughout the nation. This chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| Professional (position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Laurence Rosen (P) | $1,512 | 7.7 | $11,642.40 |
| Phillip Kim (P) | $1,403 | 24.2 | $33,952.60 |
| Brian Alexander (P) | $1,403 | 572.3 | $802,936.90 |
| Erica L. Stone (P) | $1,273 | 64.4 | $81,981.20 |
| Ryan Hedrick (A) | $826 | 2.2 | $1,817.20 |
| Christie Buzzetti (A) | $717 | 2.2 | $1,577.40 |
| Ian McDowell (A) | $717 | 10.4 | $7,456.80 |
| Henry Bloxenheim (A) | $717 | 117.9 | $84,534.30 |
| Julia Shimizu (PL) | $300 | 1.7 | $510.00 |
| **TOTALS** | | **803** | **$1,026,408.80** |

\* Partner (P), Associate (A), Paralegal (PL)

51.     Additionally, Liaison Counsel, Pavlack Law LLC, expended  13.8 hours in the prosecution of this Action, resulting in a lodestar of $7,290. *See* Ex. 6. Accordingly, Plaintiffs' Counsel devoted a total of  816.6 hours with a total lodestar of $1,033,698.80 to this Action. The requested fee amount of 30% of the Settlement Amount is $480,000,representing a total fractional

17

lodestar multiplier of approximately 0.46.

52.    Lead Counsel will expend additional time and resources preparing and submitting a reply in support of the Final Approval Motion and Fee Motion, assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and overseeing the distribution process. They will not be seeking compensation for the additional time spent on these important tasks.

**B.    Lead Counsel Bore Significant Risk Prosecuting this Action**

53.    Lead Counsel undertook this prosecution on an entirely contingent-fee basis. From the outset, there was no guarantee that Lead Counsel would ever be compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and that the considerable litigation costs required here were covered. When Lead Counsel initiated the Action, it was unknown how long litigation would last. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

54.    Indeed, Rosen Law has not received any compensation during the course of the Action and incurred $61,403.27 in out-of-pocket litigation-related expenses. A significant portion of these expenses were incurred for professional services rendered by Lead Plaintiff's experts, investigators, and the mediator, and the remaining expenses are attributable to the legal and factual research, service of process, and other expenses incurred in the course of the litigation.

55.    As demonstrated by Rosen Law's firm resume, attached at Exhibit 5, Lead Counsel is a highly experienced and skilled law firm that focuses its practice on securities class action

litigation. Indeed, Lead Counsel has substantial experience in litigating securities class actions and has negotiated scores of other class settlements, that have been approved by courts within the Seventh Circuit and throughout the country. *Id*. Lead Counsel enjoys a reputation for their persistence and skill, as well as their success in the prosecution and favorable resolution of securities class actions and other complex civil matters. Lead Counsel's experience added valuable leverage in the settlement negotiations. *See e.g., Christine Asia Co. v. Yun Ma,* 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019)* (achieving $250 million settlement against Alibaba, with the Court stating that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *Ishak v. WM Tech., Inc.*, 2025 WL 791270, at *5 (C.D. Cal. Mar. 11, 2025)* ("Rosen Law Firm, is a reputable class action firm whose attorneys appear to possess the skills, experience, and resources necessary to prosecute this [securities] action."); *Hunter v. Blue Ridge Bankshares, Inc.*, 2025 WL 1649323, at *15 (E.D.N.Y. June 11, 2025)* (Rosen "has extensive experience in litigating other securities class actions, is well-versed in securities law."); *Vinh Nguyen v. Radient Pharms. Corp.,* 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014)* (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement).

56.     Additionally, the quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Lead Counsel's substantial efforts were met by aggressive and highly skilled defense attorneys who vigorously contested Lead Plaintiff's claims, with Defendants represented by Wilmer Cutler Pickering Hale & Dorr LLP, one of the country's preeminent law firms.

57.     Mr. Van Winkle took note of the quality of work all counsel performed during the mediation process, finding that "counsel displayed the highest level of professionalism in

organizing and presenting the legal and factual issues relevant to this complex matter, summarizing their positions on liability and damages, and zealously and capably representing their respective clients throughout while at the same time objectively and candidly assessing the other side's positions and the risks involved." Exhibit 2, Van Winkle Declaration at ¶11.

### C.    Lead Plaintiff Supports Lead Counsel's Fee Request

58.    As set forth in his declaration attached as Exhibit 3, Lead Plaintiff Richard Kraemer supports Lead Counsel's request for attorneys' fees as fair, reasonable based on the work performed and the recovery obtained for the Settlement Class, and conforming with the fee agreement established between Lead Counsel and Lead Plaintiff at the outset of this litigation. Kraemer Decl. ¶¶3-5

59.    Lead Plaintiff has been thoroughly involved in the prosecution and resolution of this Action, and their endorsement of Lead Counsel's fee request supports the reasonableness of the request. *Id.*

### D.    The Reaction of the Class Supports Lead Counsel's Fee Request

60.    As noted above, 123,798 notices were disseminated to potential Settlement Class Members. Bravata Decl., ¶12. To date, no objections to the maximum potential attorneys' fees request set forth in the notice have been received or entered on this Court's docket. Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers, set to be filed by May 14, 2026.

### E.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable

61.    The Notice informed potential Settlement Class Members that Lead Counsel would seek reimbursement of litigation expenses in an amount not to exceed $95,000. As set forth in the chart below, Rosen Law incurred $61,403.27 of expenses, well below $95,000 maximum amount

set forth in the notice to Settlement Class Members. Rosen Law's un-reimbursed expenses in connection with the prosecution of the Action are categorized as follows:

| Category | Amount |
|---|---|
| Financial Expert Fees | $7,502.50 |
| Investigator Fees | $15,065.70 |
| Online Legal Research and Document Retrieval Fees | $2,106.99 |
| Court Filing Fees | $405.00 |
| *Pro Hac Vice* and Certificate of Good Standing Fees | $600.00 |
| Mediation Fees | $3,719.50 |
| Notice to Class Member Fees | $30,785.74 |
| Travel/Transportation/Hotels/Meals* | $1,217.84 |
| **TOTAL EXPENSES** | **$61,403.27** |

*Included estimated costs for traveling to and from the Settlement Hearing

62.     The expenses set forth above are reflected in Lead Counsel's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my firm and are an accurate record of the expenses incurred in the prosecution of the Action.

63.     No settlement Class Members have objected to the maximum amount set forth in the notice. If any objection to the request for reimbursement of litigation expenses is made after the date of this filing, it will be addressed in Lead Plaintiff's reply papers, due May 14, 2026.

**F.      Interests of Public Policy, Including the Need to Ensure the Availability of Experienced Counsel in High-Risk Contingent Securities Cases**

64.     Courts have consistently recognized that it is in the public interest to have vigorous, private enforcement of the federal securities laws. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action. Relatedly, it is long-

recognized public policy that settlement is to be encouraged, including the resolution of fee applications that fairly and adequately compensate the counsel who bear the risks and dedicate the time, financial investment, and expertise necessary to achieve those settlements.

### G.    Award to Lead Plaintiff Pursuant to the PSLRA

65.    Lead Counsel request an award to Lead Plaintiff, pursuant to the PLSRA, 15 U.S.C. §78u-4(a)(4), for the time he devoted to the representation of the Settlement Class, in the amount of $5,000. Lead Plaintiff was highly motivated to, and did, work closely with Lead Counsel throughout the Action to secure the highest possible recovery for himself and the Settlement Class. Instead of devoting his time to other endeavors, including focusing on running his business, as detailed in his declaration, Lead Plaintiff spent time: (a) reviewing and discussing significant pleadings in the Action such as the Company and Defendants' motion to dismiss; (b) frequently communicating with counsel to discuss case strategy; (c) produced documents to counsel; and (d) discussed, evaluated, and approved the Settlement. *See* Kraemer Decl., ¶¶3, 8.

66.    The notice informed Settlement Class Member the request for an award to Lead Plaintiff would not exceed $5,000, to which no Settlement Class Members have objected.

### VI.    CONCLUSION

67.    In view of the recovery for the Settlement Class and the substantial risks related to the prosecution of the Action, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable. I further submit that the requested fee in the amount of 30% of the Settlement Fund should be approved as fair and reasonable, reimbursement of litigation expenses, and Award to Lead Plaintiff, should also be approved.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on April 16, 2026 in New York, New York.

*/s/ Brian B. Alexander*
BRIAN B. ALEXANDER
